Your Honor, the first case on the docket this morning is 2-24-0163, two-way imprisonment of John L. Birch. The people of the State of Illinois petitioner, Appellee John L. Birch, respondent, Kelly. Arguably on behalf of the appellant, Mr. James R. Buck. Arguably on behalf of the appellee, Mr. John Moynihan. Thank you. Mr. Buck, you may proceed. May it please the court, I'm Jim Buck. Could you pull the... Okay, and I represent John Birch in this matter. Birch is seeking four things from the court. First of all, he would like a finding that he did establish probable cause to allow a hearing to proceed to determine whether he remains a sexually violent person. Secondly, he would like the court to find that he is entitled to an independent expert to help him with his case. Third, he would like certain terms of his conditional release modified. And fourth, he would like a finding that he had ineffective assistance of counsel in trying to establish several of these matters, especially modification of the conditions of his conditional release. Could you give us a synopsis of what is the probable cause for a hearing at this stage when the defendant continues to, according to the State's expert, continues to be a danger? Yes. I think the defendant's attorney, Mr. Sweenyman, laid that out in a motion that he filed, which he entitled, Argument in Favor of Finding a Probable Cause, which is found in the common Sweenyman made was, first of all, that Birch was in the third, the fifth stage of the five-stage treatment program that the Department of Human Services has. That fifth stage doesn't have a time. There's no time. No. You could be in stage five for 20 years and still not be eligible for discharge. Yes. Right? I mean, it's only five years, really, right? What is only five years? That he's been in conditional release. Yes, that's true. It could be for the rest of his life, depending upon what takes place. The case of Wendell, in which we cited, made a point of saying that the objective of the act with regard to sexually violent persons is to improve their situation and have them ultimately released back into the general public. It shouldn't be a life sentence. No, it shouldn't be, but the point is that there is no time frame. It's an individual assessment, just that particular individual. Yes, that's true. So what is it about this particular individual that you make a plausible claim? Well, again, he is in the fifth stage of that program that they have established. He has been on conditional release, as you say, for a period of time already. During that period of home confinement, which is basically what he has right now, he has been allowed to lean for limited purposes into the public. And as far as I know, he hasn't had any particular problems with that. While on conditional release, he has continued to be involved in counseling and therapy. And, in fact, at one point developed a very good rapport with one of the therapists. Unfortunately, that therapist left and changed, but he was able to do that. What about the event when he found or picked up a pipe, a 22-inch pipe? Yes, I get it. I don't know what he was going to do with that. I'm not sure. Why didn't he pick it up if he didn't have some intended use for it? I don't know. Like duct tape. You know, the duct tape was another issue. Well, I don't know that he picked up any duct tape, but that's one of the conditions that he's not to possess any duct tape because he had used duct tape. Or weapons. Or weapons, absolutely.  And we agree with that. A 22-inch pipe is a weapon, is it not? What's that? A 22-inch pipe could be a weapon. Yes, it could be a weapon. To hit somebody, particularly a woman, over the head. Yes, that's possible. No, he didn't do that. And I guess what I think the basic transaction or the things that he's done wrong were that he did pick up these cigarette butts and sometimes smoked them, I guess, or took the tobacco out of them and put them in a pipe and smoked them. And he wasn't supposed to smoke. Well, he's an addict, right? He wants to smoke because it makes him feel better. I mean, that brings up the question about is that the province of an expert or a layperson? Shouldn't an expert be evaluating whether or not that smoking has a correlation to sexual proclivity? Yes, but he has been denied an expert. Well, that's my point. That's your strongest point, isn't it, that he should have had an expert, that it was an official's discretion not to appoint an independent expert? That is one of the very good points that we have, yes. I think Mr. Slingerland did establish probable cause with the nine. I mean, he only had, Mr. Slingerland had only the expert from the state's side, and he went through that and found nine instances where he could point to things that Birch had done that would be in favor of a finding of probable cause. And the cases that we relied on, the Wilcoxon case and the Rendon case, the Wilcoxon case is a third district case from 2016. The Rendon case is a 2017 case from the first district. But they emphasized that he was one of those situations where he could do something that would help him get over the situation here where he is continued to be a sexually violent person. Now, those cases are very similar, we feel, to the instant case. First of all, we have similar age. They're all over the three, Wilcoxon and Rendon and Birch are all over age 60. And usually there is some indication that the recidivism rate decreases with age. Did Dr. Travis take that into account in any way during his evaluation? Well, yes, yes and no. It is taken into account when you do these actuarials because that 99R says right from the beginning, if the guy is over 60 years old, you start with a minus three. And then you start adding other things. But the way that works, it appears to me, is that you're always going to come out with the same result. You start out with a minus three, but then you add, okay, he had sexual violent transactions with a person, that's one. He had lived with a person for two years, that's another one. You add all these up and you always come up with the same result. So I don't know that that, yes, that is taken into account with that actuarial. But other than that, I'm not so sure that that was taken into account by Dr. Travis. But the actuarial is, I guess, important to the evaluation, and maybe they consider it efficient, but there are also places in that report where they can actually say something about a specific issue such as age or failing to comply with general rules as opposed to any rules that relate to his sexual conduct. Did Dr. Travis, who I guess is with the Department of Corrections, did he say anything in addition to the actuarial in his report? Yes. It was 57 pages. Well, yes. And that's where Mr. Slingerman was able to find nine things to say positive about Mr. Birch, to try to establish that there is probable cause. Now, obviously, using the state's expert puts you at a disadvantage right from the beginning, but yet he was able, Mr. Slingerman, to find nine instances where there was something positive said by Dr. Travis. Was Dr. Travis the only witness that testified either in person or through reports? For this review, yes, only Dr. Travis's report. That 57-page report was the only thing that the court had in front of it at that time. You know, again, it seems to me Mr. Birch has basically served his time in prison, 15 years, and now he's spent 19 years with the Department of Human Services. So, you know, 34 years and not once in that, well, I guess you did have the hearing back in 2013 where he was established to be a sexually violent person. But since then, there hasn't been another hearing to try to determine whether he remains a sexually violent person. That's basically what we would like the court to say, that, yes, he's entitled to another hearing to determine whether he remains a sexually violent person. Well, there's an interesting issue here, at least to me. Sexually violent person is something we use in the statute. We created a remedy of sorts for that issue. But if you look at any of the professional manuals that are used by doctors and even the registered social worker who's supposed to be involved in this process at the department, does it ever say that sexually violent, I don't know what you'd call it, a sexually violent person can be cured? Is that what is needed or is it that they have gotten over this addiction or they know how to control this addiction? Well, I think the reason for the act is to give people treatment so that they will get cured and that they will be allowed to return to the public, general public. I mean, again, that Rendon case makes that very clear statement. And I think I cited it in my brief that this is one of the main reasons that you have this act is to hopefully allow these people to get better. But if you never have a hearing to determine whether they are better, then it's virtually a life sentence. And the Rendon case said, the court there said, they didn't agree with that kind of result. And I think that's, again, what we're trying to say here with regard to Mr. Birch is that he should be given an opportunity. You know, the expert, it's going to be an independent expert. We don't know for sure that that independent expert is actually going to agree that he is cured. But we want an opportunity to try to do that. And that is something that has not been done at this point. So that's one of our main points is that he should be given an opportunity to present evidence that he is, in fact, no longer a sexually violent person. There are several references in the record and then in the briefs, not particularly yours, but in the Epley's brief that hearings were held, even in this proceedings. Are we limiting or should we look at limiting those hearings to they were arguments of counsel as opposed to any factual testimony other than the 57-page report? Because hearing, to me, indicates you have witnesses. They testify. You make decisions based upon the facts. Were those the types of hearings we had here, or were they more legal argument type? They were mostly legal arguments. Mr. Birch was called as a witness and did give limited testimony. Frankly, he kind of went off text. And at some point, I think Mr. Swiglin said probably it wasn't worthwhile to continue in that vein, unfortunately. But that was the only hearing where there was actual evidence given by one of the parties involved, and that was fairly limited. Other than that, it was basically argument from the state and then argument from Mr. Swiglin on behalf of Mr. Birch. Did you ever represent Mr. Birch in the trial court? I did not. Okay. The reason I got the case was that Mr. Swiglin was looking for somebody because there was the indication that he had provided ineffective assistance of counsel. So he needed somebody else to handle the appeal, and that turned out to be me. Any questions? On the issue of ineffective assistance of counsel, on the one hand, you argue that he made a good argument for a probable cause determination. But on the other hand, he was ineffective. When we look at an attorney's representation, we consider the entire course of representation. Yes, I understand that. My point was, and what Mr. Birch's point was, is that he wanted Mr. Swiglin to object to all of the decisions, and he only objected to five. And you argued in your brief that he, by not doing so, he violated the rule of professional conduct 1.2. Yes. But isn't the selection of issues to raise, you know, is different than the objective of the representation? The issues to raise to reach that objection, generally speaking, solely in the discretion of trial counsel, unless that decision is … The way I read the rule and the other, I think I cited another later rule, 1.8 or 1.18 or whatever, it said that if Mr. Swiglin did not want to object to all of the rules, then he should have told Mr. Birch that and gotten Mr. Birch to agree. If Mr. Birch said, no, you still have to object to all of them, then he should have withdrawn. Now, that's Mr. Birch's position, and that's why I was retained, and I'm making that point on his behalf. Okay. How do you prove ineffectiveness of counsel if you don't explain the reason why Mr. Birch wanted each and every objection to be raised? Because if you're – the anthem you're presenting is, is that you're leaving out the premise that by failing to do what Birch wanted him to do, he was ineffective, even though there's nothing to establish a rational basis to make the argument. So you are inserting into your syllogism the premise that there was a basis for each and every objection that was both rational and would have changed the result. But I don't see anything like that in your brief. Do you disagree with my analysis? I didn't make a specific point with regard to each rule. I did talk about the five rules that Mr. Suleman had objected to. And then I note that if you look at some of the rules, like if you look at Rule K from the statute compared to the Rule 11 of the actual rules that he had, Mr. Birch had, there's a dramatic difference between those two. And I don't know exactly how it is that the – Well, I'd like to clarify what your argument is. Is your argument that of the five objections raised, he was ineffective? Or are you arguing that he was ineffective because he didn't raise an objection on every regulation? That was the basis of the ineffective assistance of counsel, that he did not – I would have asked you, what were the bases for the argument that the objections were inadequate on the five? Well, I did give specific reasons for that in the brief, Your Honor. Okay. Any other questions? No, thank you. Thank you. You'll have an opportunity to make rebuttal, sir. All right. Thank you. Mr. Moynihan? You may proceed. Good morning. My name is John Moynihan. I'm an assistant attorney general representing Petitioner Appellate in this case. Good morning. Respondents' motions at issue here are from the 2022 and 2023 time period. And during those years, Respondent's story was basically a few steps forward and then a few steps backwards. He was out on conditional release, but then he was returned to a secure facility for repeated rule violations. And those repeated rule violations were administrative rules rather than anything related to the reason he was in sexual misconduct, correct? No, there were substantive rule violations. And to clarify one point from Respondent's briefing, he was written up formally for two – he was written up formally on two occasions for rule violations. However, the record shows a range of rule violations over several month periods, really beginning in March 2022, culminating in him returning to the secure facility in November 2022. Those rule violations included things like deviating from approved routes, leaving his apartment without authorization, not completing his required sexuality logs, not taking required medications. Those are substantive, not just administrative violations. When he left the premises, was that to throw out trash? Sometimes. Rather than corral some woman for an escapade? Well, that's not entirely clear. He did say that he was leaving to throw trash without authorization. There were other times he left without authorization and declined to disclose to the conditional release agent what he had done. And there was one moment where he was behind a woman in the alley, ostensibly throwing out trash. Would that agree just why wasn't he sent back to the institutional care? Was it based upon the opinion of an expert? The declining to send him back at that point? My point is, who decides, based upon these violations, what happens to this respondent? In the short term, his care management team. So they can decide whether to give him a verbal reprimand, whether to write him up, or whether to take him back to the secure facility. Well, I'm talking about the hearing where apparently Dr. Travis's 50-some page report was the basis upon which the trial court made its judgments or rendered its judgments. So if the report indicated conditional release as opposed to reinstitutionalization, what was the reason for that? I believe you're talking about the 2023 reexamination. The 2023 reexamination took place in July. He had been in the secure facility after having been taken off conditional release for seven or eight months, since November 2022. And based on the information in front of the judge at that time, based on the information in front of the expert, he had made enough additional progress after being returned to the secure facility to go back onto conditional release. So the report relative to what you just indicated, there were three substantive violations, were before he was released on conditional release, or was it after he was released, like you just reported? He's been on conditional release effectively two times. He first went on in October 2020, he went back to a secure facility in November 2022, and he was in that secure facility again until October 2023 when he was put back onto conditional release. And when the judge decided that there was probable cause or that an expert was not required, where is that in the timeline? January 2024. Okay. Because he has to do, whether he's on conditional release or he's in custody, he has to do an annual assessment. Yes, that's right. And so they take into account, I assume they're not supposed to consider the previous order, but they're supposed to take into account any reports, which would be Dr. Travis, anything that might have been determined, I guess, by his care management team. Would that include the registered sociologist and the nurse and the other persons that are required by statute? I think most of that information gets rolled up into the annual reexamination report, in this case from Dr. Travis, though there would be an opportunity to present anything that wasn't put into that report. So even if he didn't have any violations, or if a person had no violations, they would still have to have an annual report, correct? Yes. Okay. How is counsel able to, I think you make this point in your brief, that counsel was unable to explain how an independent evaluator would provide favorable testimony. But how is counsel able to explain what testimony an independent evaluator would provide without obtaining a report from an independent evaluator? That's the catch-22 that the respondent is in, isn't it? It's not a catch-22 because you don't actually need the evaluator's report first. What you need to do is point to information in the record or facts in existence from some other source that you would expect. Didn't counsel do that with respect to Dr. Travis' report? No. So there's a difference between pointing to affirmative evidence and then a lay disagreement with the state's evaluator's report. The fact that counsel found things he disagreed with or pulled out of context particular facts that were good for a respondent is not enough to get over that hurdle of showing that there's something else, something specific to this respondent that an independent evaluator can testify to that would be crucial for his case. So how about the cigarette butts, the tobacco addiction? Wouldn't an expert be helpful explaining that? Potentially, if respondent had pointed to something specific about that that an expert could testify to. But there was information in the record that it was a maladaptive coping mechanism, that it was contrary to his treatment goals. That was wrapped up in Dr. Travis' report and in front of a judge when he denied the motion for an independent evaluator. While he was in custody, did he have, and I couldn't find it, I was trying to find it in the record, and maybe I just missed it, did he smoke while he was in custody? While he was in a secure facility? I don't know. I'm not sure if it's in the record. Okay. And let's assume he did because we know they can, provided they're in the right place at the right time. How do we justify just, you can't do it now because you're on conditional release? Well, there are two points. The first is, after he was caught smoking, he said that he had started again when he was on conditional release and quickly become hooked, which suggests that he had not been smoking before. And the second is, this is, in a respondent's case, both an administrability rule and a pro-treatment rule. So when people in a respondent's position are put on to conditional release, they have to be housed in the community. It's very difficult to find this housing. How do you know what you've just said is accurate? That when people are put on to conditional release. No, you said because, blah, blah, blah, blah, blah. And my point or question to you is, why did you say because? Because as far as I know, in my eight years of, sorry, my age of 80, but my experience since I was 21, I've never heard a layman claim that smoking and the addictiveness of smoking will, with a reasonable degree of scientific certainty, cause someone to be a sexually violent person. So when you start saying these are the things because, they're based upon testimony of an expert, right? Because that was the only witness the state presented, correct? That is the only expert in front of the judge. And if it was the only expert speaking about something that laymen don't understand, wouldn't the respondent be at a disadvantage if he didn't have an expert to at least attempt to explain to his client the correlation between smoking and the continuation of the prognosis, that with a greater probability than in the past, simply, well, I shouldn't say simply, but in part because of smoking, that the expert couldn't advise him as to why his addiction is something that he should give up in order to prevent his sexually violent propensities? So the state's position is not that smoking causes anyone to be an SVP? Well, that is, how can it not be the state's position when that's the testimony or the report indication that you submitted as evidence to establish probable cause? I don't believe that's the evidence that we submitted. What was in the expert's report in respondent's treatment records was that he claimed smoking was a coping mechanism for stress. In group therapy, he recognized and admitted that it was a maladaptive coping mechanism. It was not a helpful way to deal with stress. It was, in fact, a negative way to deal with stress, and it was displacing the positive. Smoking and drinking, I think, we'll all agree is maladaptive. The question is, does it cause sexually violent propensities? I don't think that's the question. I think the question is, is it enhancing his treatment or is it inhibiting his treatment? But it can't be cured, and that's the question I ask counsel. This is not a curable disorder. This is making him better and more able to appropriately respond to these urges that he had. And if he needs something to help him with stress, which I assume relates to this issue, why is it prohibited? Why is smoking prohibited? Yes. Because it's a maladaptive coping mechanism, and it's displacing the positive coping mechanisms that therapy is supposed to give him. Well, it's a heck of a lot better than being sexually violent. Wouldn't you agree? If given the choice, yeah. Can I get – go ahead. I've got it. Can you distinguish Holt with respect to the condition for electronic devices and why we should not follow Holt, the argument that the restriction to no devices whatsoever, electronic devices, is unreasonable? I don't think we need to distinguish Holt because that condition was modified when he was put back onto conditional release the second time. And he is able to access the Internet with CMT approval. And that is an entirely reasonable restriction in light of the dual goals of conditional release, both protecting the public and enhancing his treatment and rehabilitation. So he needs approval to go online to, for example, apply for a job? Yes. You use the term maladaptive? Yes. Is that a term of art? It is the term that was used in the respondent's group therapy sessions. Is it a legal or a medical term? I don't know specifically, but it was used in a medical context. It was used in his group therapy context. And if it's a medical term, does it require a witness with some qualifications as a medical expert? Sure. Like Dr. Travis, who is a reporter. Then how is the respondent supposed to defend himself or refute the State's position if he's not given the opportunity to retain an expert in this area to at least respond?  I've seen cases where lawyers have been found to be ineffective because they didn't retain an expert. And what ended up happening was one side had an expert and the other side didn't have an expert. And it was claimed that the other side that didn't have an expert should have had an expert. And so the point is that since lawyers are ineffective for doing that, why aren't the State ineffective for providing or failing to provide medical experts for the other side, so to speak, to at least have some ability to procedural and possibly substantive due process? We don't know whether it's substantive because we don't know what the expert would say that would be retained. But the underlying unfairness of this situation is this individual was held to a standard which was enunciated and opined by an expert, and he was not provided an expert to respond. And the terminology and the arguments that you're making are based upon the expert testimony which he wasn't allowed to respond to with any effectiveness because he didn't have an expert. Even an expert lawyer in this area couldn't opine. And if there was an objection to this lawyer's opinion, I think it would be not an abuse of discretion to sustain the objection and to affirm it on appeal. So the problem I have with this case is your argument, although it's not necessarily illogical, it's definitely unfair because you fail to recognize that how is this person supposed to respond to an expert's testimony if you don't provide him an expert? Judge, I hear my time is allowed, so may I answer a question? I'll give you an example. In medical malpractice cases, if there isn't an affidavit filed by an expert to support the malpractice action, it is dismissed. And the reason why is because supposedly there's supposed to be some sort of indication by an expert that the filing of the lawsuit and the allegations therein are reasonable. You haven't even given this individual the ability to respond, even though you filed a motion to seek a finding of no probable cause. And in the process, you basically are requiring him to respond to your no probable cause without the only type of testimony that would have any ability to prevent you from getting the finding that you're seeking. And do you have any citation to authority that suggests that this is appropriate? Yes. Two, Your Honor. First, I'll point to the statute, which says that any time he wants to retain an expert, he is permitted to and we won't stop him. If he wants one appointed at the cost to the court, then he does have to meet a particular standard, which is articulated in Kirst and Butler. So Kirst is 2015, IL App, 2nd, 14532. Butler is 2022, IL App, 1st, 201107. Those cases establish that respondents need to point to something specific, point to factual information on which they expect an expert to give testimony specific to them that would be crucial to their defense. If you look at cases where experts were appointed, those facts are in the record. All of the good facts in Remden and Wilcoxon about how much improvement those respondents have made over time, that's what got them experts. You don't see that in the factual record here. We don't have a – it's not in the record, but I'm just curious, since you're here and doing this particular work, I know you have compartments, as it were, and you're familiar with the statute, and so that's why you're standing in front of us. Dr. Travis is employed by the Department of Corrections, correct? I don't remember if it's the Department of Corrections or the Department of Health, but I believe he is a state employee. But when we bring him in or when you bring him in to do this evaluation, we're not paying him extra. The state's not paying him extra. That's his job. I'm not certain. Okay. I'm pretty much certain based upon my history with these cases. And so if you look at that situation, how often does Dr. Travis actually find that people are good and ready to go into conditional release under multiple conditions? It's not in this record, and I don't expect you to guess, but I think Justice McLaren's point is well taken. If this is what he does and this is what he is hired to do, why – and most of your respondents don't have jobs. They have commissaries when they're in custody. Family provides them. Maybe family can't afford these things. How exactly is a respondent able to respond without some help from a professional? That's the real question here. And you said we point to facts. There are a lot of facts in here that will – in my mind, he's over 60. There is scientific proof that over 60 changes a lot of things. It's never really evaluated in this case, is it, other than on the actuarial. And you'll realize it after you're 60? A long time from now. But anyway, it's not evaluated any other way than minus three on these standard reports, which, by the way, have always been questioned for their scientific reliability. So, I mean, what are we talking about here? I don't want people in my neighborhood coming out if they're sexually violent, but I want them to have a chance to prove that they're not. This is what this case is about. I've made my comment. Your point is that generic representation is not enough. Yes. And that's what you have here. There needs to be something specific to that respondent. If there are no other questions, we ask that the Court affirm the rulings below. Thank you. Well, you made a statement that was somewhat of a negative pregnant or a conditional statement. And that was that this particular respondent has not referenced facts upon which there should be an appointment under the cases that you cited to be an exception. So, tell me as best you can in attempting or to respond to my question to ask you to prove a negative point. What were the facts that supposedly weren't discussed that are contained in the record such that you would deem them to be not relevant or material? That's a tough one. I'm not sure I understand the question, Your Honor. Well, when I asked you the question, you responded with two citations. And my question to you is, okay, let's assume that those cases have application to the situation, but you qualified it and you explained it on the basis that there has to be facts that he presents to qualify for such things. So I'm asking you, since this record does have facts in it, what facts that are in the record do you think are not relevant or material such that they would not constitute facts sufficient to sustain his basis for an appointment? The issue is the facts in the record show he does not, he has not made the progress required to show a plausible change in his situation or to show that an expert would give a contrary opinion to Dr. Travis's opinion. Doesn't that presume that you're presuming that the reason for this is because of maladaptive practices that don't necessarily, by correlation or proof, establish a sexually violent person, but establishes somebody who likes to smoke cigarette butts? The smoking is one of a long list of rule violations, including failure to complete sexuality logs, failure to take prescribed medication, lying to conditional release agents, picking up things off the street, leaving an apartment without authorization. The smoking is one of a long series of rule violations that point to the opposite direction. And it doesn't require an expert opinion to decide what the weight and the credibility and the applicability and the relevance and the materiality of all those violations portend for purposes of determining whether or not he should be given fewer regulations or be released or re-institutionalized. If he had offered... If he had offered... If he had offered proposed expert testimony that those things weren't material or should be weighed differently, then the outcome might be different. Then we go back to Justice Burkett's catch-22, and we now have catch-23 because you're creating a circumlocution where you start out with a premise and by the time you go all the way around with your logic, you come back to the beginning. And the point is, is that that's wonderful. I think it's great that you're making a logical, circuitous argument. But it doesn't change the fact that he's not going to be able to do what you say he is required to do under the cases you cite if he doesn't have an expert to help him, which I believe was what Justice Hutchinson was referencing. There are cases in which experts have been appointed, which shows it isn't circular. Just this respondent hasn't met the standard. When is his next evaluation? I expect it would be this summer. So he can petition the court at that time? Yes. Next for appointment of an expert. Roy Hutchinson? And would he still be in the DeKalb County facility or DeKalb County jurisdiction because Rushville? I don't know where he is now, but where would it be heard? Same county or different county? I believe the same county. Any other questions? No, thank you. Thank you, sir. Thank you. Thank you. Mr. Buck, you may proceed.  Several questions were raised about the word maladaptive. To my knowledge, I don't have the... Are you an expert on the genesis of terminology with prefixes of mal-, in-, and un-? Well, a little bit. I like to think I somewhat know language fairly well, but the only time that I know that maladaptive was used in the report was when Dr. Travis stated that in one of the therapy sessions, one of the persons, you know, participating in that told Mr. Birch that smoking was his maladaptive way of dealing with stress or something to that effect. I don't remember that Dr. Travis ever used the word maladaptive himself. He was just referring to what was said in these sessions and that some of these people that were participating said to Mr. Birch, well, smoking is just your maladaptive way of dealing with stress. So I'm not sure how important maladaptive really is to the case. I think a more important issue is one of your honors pointed out having an expert would be crucial for Mr. or wouldn't it be crucial for Mr. Birch to prove his case. And I think the state itself answered that question in its brief. On page 33, it says, To be sure, a respondent is unlikely to establish probable cause to believe that he is no longer an SVP, sexually violent person, a question that turns on specialized knowledge of psychological disorders and risk assessment based on lay disagreement with the adverse opinion of the DHS evaluator. So I think right there, they're admitting you need an expert. That's the only way you're going to be able to get beyond to prove that, in fact, you have a situation where you can prove probable cause and then prove that he's no longer a sexually violent person. What about the cases that counsel cited? Butler and Kirst, I believe, at page 32 and 33 of their brief. Yeah. That it's not enough to just make a generic request for the appointment of an expert. You have to be able to point to some facts or set of facts where an expert's opinion would be beneficial to the defendant or not beneficial but crucial to the defense case. Well, again, I would go back to what Mr. Talk about specific facts. What specific facts would that expert address? Well, I guess I would go back again to what Mr. Slymulin had put into his request for to find that probable cause had been established. Those, I think, are very specific facts that he took directly from the expert that the state has. So, you know, given the fact that he didn't have his own expert, somebody mentioned it's a catch-22. It is kind of a catch-22. I mean, you're supposed to have something expert, and yet you only can rely on the expert of the state. Now, again, this seems totally unfair under these circumstances. So it seems to me that Mr. Birch has established enough to have a hearing with the help of an expert. And that's what is needed in this particular case at this point in time. And so I would ask that this court direct the – and it will go back to DeKalb, as I understand. That's apparently where he committed these crimes, and that's where the case gets heard. Rushville, I guess, is way down the southern part of the state. So that – anyway, so I think that this is a situation where we do need an expert appointed and then a hearing to determine whether, in fact, Mr. Birch remains a sexually violent person. Thank you. Any questions? No. Thank you. We'll take the case under advisement. There will be a short recess when we have another case in the court.